<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUTH TORRES, | Civil Action No. 13-5439 (SDW)(SCM) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | January 30, 2015 |

**WIGENTON,** District Judge

Before this Court is Plaintiff Ruth Torres's ("Plaintiff" or "Torres") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of Torres's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **AFFIRMS** ALJ Olarsch's decision.

## I.     PROCEDURAL AND FACTUAL HISTORY

### A.  Procedural History

Torres applied for Social Security Disability Benefits on January 17, 2007, which was denied at the initial and reconsideration stages. (R. 108-109, 131-140.) Upon Torres's request for a hearing before an administrative law judge (R. 55), ALJ Olarsch conducted a hearing on November 19, 2009, at which Plaintiff appeared with counsel and testified. (R. 64-107.) On December 14, 2009, ALJ Olarsch issued a decision finding that Plaintiff was not disabled and denying her application for disability benefits. (R. 110-112.) Torres filed a timely appeal. On August 18, 2011, the Appeals Council vacated ALJ Olarsch's decision and directed him to specify, on remand, the limitations on plaintiff's ability to perform mental work-related activities in light of his finding that Plaintiff suffered from depression. (R. 127.) ALJ Olarsch conducted a second hearing on December 22, 2011, and on January 24, 2012 issued a decision, again finding that Plaintiff was not disabled and denying her application for disability benefits. (R. 19-33.) On July 15, 2013, the Appeals Council declined to review ALJ Olarsch's January 24, 2012 decision, making it the Commissioner's final decision. (R. 1-6.) The main issue before this Court is whether ALJ Olarsch's January 24, 2012 decision is consistent with the remand order from the Appeals Council.

### B.  Personal and Employment History

Torres is a 56-year-old woman with an adult son. (R. 27.)  She left school in the 8th grade. (Id.) She has past relevant work as a home health aide. (R. 27.)  Although Plaintiff alleges that she has been disabled since January 1, 2005, she last worked sometime in 2007, when she was self-employed as a babysitter. (R. 22.)

### C.  Medical History

The ALJ found that Torres suffers from multiple illnesses, including depression, asthma, cervical spine disorder, spider veins, and hypertension. (R. 26.)

Regarding Plaintiff's mental ailments, according to Plaintiff's medical records, starting in August of 2005, she received regular psychiatric treatment from Dr. Pamela Williams in the Mental Health Clinic of Passaic. (R. 27.) In a summary report, Dr. Williams noted that Plaintiff reported a longstanding history of mood disorders including depression. (Id.) Dr. Williams diagnosed Plaintiff with a plethora of psychiatric problems including, but not limited to, schizophrenic disorder bipolar-type, depressed mood with possible psychotic features, polysubstance abuse in full remission,[1] feelings of hopelessness, suicidal ideations without plan, forgetfulness, extreme anger, irritability and distractibility. (Id.) As a result, Dr. Williams opined, Plaintiff is prone to anger and irritability even in low stress situations, has difficulty dealing with crowds, and tends to be sedentary for long periods of time due to her depression. (Id.) Lastly, Dr. Williams indicated that Plaintiff's symptoms persisted despite treatment. (Id.)

On March 24, 2007, Dr. Alec Roy conducted a psychiatric examination of Plaintiff. (R. 30.) He noted that Plaintiff was oriented to time, person, and place, and that she bore no evidence of paranoia, delusions, or hallucinations. (Id.)  He also indicated that while Plaintiff's mood and affect were fine and her speech was normal, she "got a little tearful."  (Id.) Dr. Roy found no clinical evidence of immediate, intermediate, or long term memory loss. (Id.)  Dr. Roy further found Plaintiff was able to follow instructions, repeat back numbers, spell words, and perform simple calculations.  (Id.) Consequently, Dr. Roy provided a diagnosis of rule out depressive

---

[1] Plaintiff had problems with alcohol and illegal drugs about 25 years ago. (R. 27.)

disorder in remission, opiate dependence in long term remission, and physical problems. (Id.) Lastly, he awarded her a global assessment functioning ("GAF")[2] score of 69. (Id.)

On May 12, 2008, Plaintiff saw Dr. Paul Fulford, Ph.D. at the request of the Division of Disability Determination Services. (R. 26.) Dr. Fulford found that Plaintiff's grooming and hygiene was appropriate, her speech was normal, and her grasp of current and past general information was good. (Id.) He noted that Plaintiff complained of mood instability and feelings of worthlessness but denied any present suicidal ideation or paranoid thinking. (Id.) Based upon the interview, assessment of Plaintiff's memory, and her concentration and history, Dr. Fulford estimated that Plaintiff possessed borderline to low average range of intelligence. (Id.) Therefore, he diagnosed Plaintiff with major depression, substance abuse in sustained full remission, physical problems, and gave her a GAF score of 65. (Id.)

In Dr. Williams's progress reports, submitted in 2009 and 2011, she indicated that she found little to no improvement in Plaintiff's mental status. (R. 30.) However, she noted that while Plaintiff's affect was sullen and sad, her mood was fine. (Id.)  Plaintiff also had coherent, relevant, and goal-directed speech, and did not exhibit thought process disorder. (Id.) Plaintiff was alert, oriented to person, place, and time, and denied hallucinations, suicidal or homicidal ideations, and delusions. (R. 31.) In Dr. Williams's view, however, Plaintiff "would have difficulty obtaining or sustaining gainful employment because of persistent mood symptoms occurring three to four times per month." (Id.) Dr. Williams awarded Plaintiff a GAF score of 50. (Id.)

Plaintiff also claims to suffer from various physical ailments, including scoliosis of the lower back with pain, two herniated discs in her neck, obesity, asthma, spider veins, and

---

[2] The Global Assessment of Functioning ("GAF") is a numeric scale, ranging from 0 (inadequate information) through 100 (superior functioning), used by mental health specialists to measure the progress of an individual's overall—social, psychological, and occupational— functioning. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders-IV-TR ("DSM-IV-TR"), 32 (2000 ed.).

hypertension. (Pl. Br. 3.) On April 2, 2007, Dr. Sivadas conducted a physical examination of Plaintiff. (R. 29.) He described her as "moderately obese in no acute distress." [3] (Id.) Her gait and station were apparently normal, and she was able to get on and off the examination table without help. (Id.) Dr. Sivadas also noted that "musculoskeletal examination of the cervical and lumber spine showed normal range of motion." (Id.) He further indicated that while Plaintiff appeared depressed and wept during the interview, her neurological examinations revealed that she was "alert and well-oriented times three." (Id.) He also found evidence of varicose veins. (Id.) Therefore, Dr. Sivadas diagnosed Plaintiff with chronic bronchial asthma controlled with medication, hypertension controlled with medication, depression, neck pain, possible degenerative joint disease, and varicose veins. (Id.) Plaintiff underwent another physical examination on August 15, 2008 with normal results. Plaintiff's neck showed no apparent abnormalities, she had normal circulation and range of motion in her extremities and joints, and her gait was steady. (Id.)

An MRI of Plaintiff's cervical spine on January 16, 2007, showed "disc herniation at C5-6 and anterior spurs at C4-5." (R. 29.)   A follow-up MRI of Plaintiff's spine performed approximately three years later, on February 22, 2010, showed "degenerative arthritic changes at C5-6 with associated disc space narrowing and small anterior arthritic spurs." (Id.)

### D. Plaintiff's Functional Reports and Testimony.

On February 21, 2007, Plaintiff completed a function report in which she indicated that she usually stayed at home all day, watching TV or in bed, unless she had a doctor's appointment. She went outside about once a week. She could not lift. She cooked about twice a month and cleaned when she felt okay. She did not participate in social functions and had difficulty getting along with others. She did not handle stress well. On the other hand, Plaintiff stated that she had

---

[3] At the post-remand hearing in 2009, Plaintiff testified that she was five feet two inches tall and weighed 207 pounds.

no problems following directions and could walk 5 to 6 blocks without stopping. She could use public transportation and could drive if her sister or son is with her. (R. 28.)

On April 11, 2008, about fourteen months later, Plaintiff completed another function report. This time, Plaintiff indicated that she was able to prepare her own meals, do laundry and clean her apartment. She went outside every day by herself, by car and public transportation. She spent most of her time watching TV, doing crossword puzzles, or visiting her sister at her house. She could lift 25 pounds and walk 5 blocks without stopping. She indicated that she could get along with authority figures, such as law enforcement officers, and could handle stress. However, she stated that she sometimes felt paranoid and found it difficult to be around other people. (R. 28.)

At the first hearing held on November 19, 2009, Plaintiff testified that she had high blood pressure, scoliosis of the lower back, two herniated discs in her neck, poor blood circulation in her legs, hepatitis, and liver problems. (R. 27.) She testified that she also suffered from asthma, but indicated that the attacks had lessened with medication.  (Id.) Plaintiff stated that she cooked at times, did light household duties, and watched television, however, Plaintiff testified that she was unable to sit for long periods of time or walk far due to back pain. (Id.)  She further indicated that she had difficulty lifting things and bending. (Id.)

At the post-remand hearing, Plaintiff testified that, about two to three times a month, she spent the entire day in bed due to stiffness in her knees. (R. 30.) She also stated that she sometimes felt paranoid and would avoid people because she believed they are talking about her. (Id.)  She had monthly sessions with her therapist once a month and took medication, which helped sometimes. (Id.) Plaintiff also testified that her medication causes her to sleep for up to two hours during the day. (Id.)

II.     **LEGAL STANDARD**

   A.  **Standard of Review**

   In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  On the other hand, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  Hartranft v. Apfel, 181 F.3d 358, 369 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla;' it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Bailey v. Comm'r of Soc. Sec., 354 Fed. Appx. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).   If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the  possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   Daniels v. Astrue, 2009 U.S. Dist. LEXIS 32110, at *2 (M.D.Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because we would have reached a different decision."  Cruz v. Comm'r of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360).  However, "where there is conflicting evidence, the ALJ must explain which evidence he[/she] accepts and rejects, and the reasons for that determination."  Cruz, 244 Fed. Appx. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

**B.     Standard for Determining Eligibility for Disability Benefits**

An individual will be considered disabled under the Act if he/she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The physical or mental impairment must be severe enough to render the individual "not only unable to do his[/her] previous work but [unable] considering his[/her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy . . . ." § 423(d)(2)(A). Subjective complaints of pain, alone, cannot establish disability. § 423(d)(5)(A).  Instead, a claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical and laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." § 423(d)(5)(A).

The Social Security Administration (the "SSA") utilizes a five-step sequential evaluation process to determine whether an applicant is entitled to Social Security benefits.  Cruz, 244 Fed. Appx. at 480 (citing 20 C.F.R. §§ 404.1520 (a)(4)(i)-(v)).  "A negative conclusion at steps one, two, four or five precludes a finding of disability." Cruz, 244 Fed. Appx. at 480.  However, "[a]n affirmative answer at steps one, two or four leads to the next step.  An affirmative answer at steps three or five results in a finding of disability."  Id. (quoting 20 C.F.R. §§ 404.1520 (a)(4)(i)- (v)) (internal quotations omitted).

The United States Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is

8

of the required duration and which significantly limits his ability to work.  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry.  If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience.  If the claimant cannot do his past work or other work, he qualifies for benefits.

Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990); see also 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).  The burden of persuasion lies with the claimant in the first four steps.  Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 763 (3d Cir. 2009).  However, if the claimant is able to show that the impairment prevents him/her from performing his/her past work the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy."  Id. (citing Kangas v. Bowen, 823 F.2d 775,777 (3d Cir. 1987)).

Plaintiff contends that the ALJ's determination that Plaintiff is not disabled is reversible error because it ignores the weight of the substantial credible evidence on the record. Plaintiff also challenges the ALJ's decision to give partial but not controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Pamela Williams. Furthermore, Plaintiff alleges the ALJ failed to properly evaluate her mental impairments and consider their attendant limitations; failed to fully develop the record as ordered by the Appeals Council; and essentially ignored the vocational expert's testimony. (Pl. Br. 5-17.)

Upon consideration of the evidence, this Court affirms the ALJ's  decision that Torres does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 because it is supported by

substantial evidence.  Also ALJ Olarsch's finding that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(c) is supported by substantial evidence on the record. Lastly, the Court concludes that ALJ Olarsch's decision is consistent with the remand order from the Appeals Council.

### III.   DISCUSSION

#### A.  The ALJ's Decision

Based on the record presented, ALJ Olarsch concluded that Plaintiff had not engaged in SGA for the requisite time period, and that none of her physical and mental impairments, though severe, considered individually or collectively, met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1, specifically listings 1.02 (disorders of the spine), 12.04 (affective disorder) and 12.09 (substance abuse disorders) (See R. 24-25.) In his RFC analysis, between steps three and four, the ALJ accorded treating physician Dr. Williams's assessments and medical opinion that Plaintiff is disabled  "little weight but . . .  not 'controlling weight'", and instead concluded that Plaintiff has the RFC to perform the full range of light work as defined by 20 C.F.R. § 416.967(b). (See R. 26, 31.) At step four, the ALJ found that Plaintiff could not perform her past relevant work. (R. 32.) At step five, the ALJ called Rocco Meola, a vocational expert, and based on the expert's testimony, as well as Plaintiff's age, education, work experience, and RFC, concluded that Plaintiff was not disabled. (R. 32.)

#### B. The ALJ's Treatment of Dr. Williams's Opinion

Plaintiff argues that ALJ Olarsch committed reversible error by refusing to give controlling weight to the opinion of Dr. Williams, Plaintiff's treating psychiatrist. Plaintiff further claims that by concluding that "Plaintiff's complaints were 'basically subjective and without substantial medical foundation[,]'" the ALJ disregarded Dr. Williams's findings. (Pl. Br. 9.) In particular,

however, Plaintiff challenges the ALJ's treatment of Dr. Williams's November 13, 2009 report, in which she diagnosed Plaintiff with schizophrenic affective disorder, bipolar type; and polysubstance abuse in full remission with methadone maintenance.  In that report, Dr. Williams gave Plaintiff a GAF score of 50 and opined that due to Plaintiff's persistent mood instability, inability to cope with crowds, and extreme irritability even in low stress situations, Plaintiff is disabled and would have difficulty obtaining and maintaining gainful employment going forward. (R. 31.) After reviewing all of the psychiatric opinions on the record, ALJ Olarsch found this portion of Dr. Williams's opinion inconsistent with Plaintiff's testimony, her functional reports, as well as the rest of the medical opinion on the record, including Dr. Williams's own treating records. (R. 31) Furthermore, the ALJ observed that Dr. Williams's "declaration of disability . . . involves an issue reserved for the Commissioner . . ." (Id.) Nevertheless, the ALJ incorporated the remainder of Dr. Williams's findings into his analysis of Plaintiff's RFC.

The opinion of a treating physician is generally entitled to great weight, and in some cases controlling weight, when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (A treating physician's opinion should be given "great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000))).

An opinion regarding the Plaintiff's health is a strictly medical question. Similarly, it is axiomatic that only the Commissioner is authorized to decide the legal issue of whether or not a claimant is disabled under the Act. See 20 C.F.R. § 416.927(c)(1).  Dr. Williams's assertion of

disability is not a medical opinion. As such, it is not entitled to controlling weight by ALJ Olarsch in determining Plaintiff's eligibility for disability benefits. Furthermore, Dr. Williams's findings support neither her conclusion that Plaintiff is totally disabled nor a GAF assessment of 50, which is commonly indicative of severe conditions like suicidal ideation.[4] In the November 13, 2009 report, Dr. Williams noted that Plaintiff was calm, cooperative, and engaging, with coherent, relevant and goal directed speech. (R. 27.) Dr. Williams indicated that Plaintiff was alert, fully oriented, with fair judgment and insight, and grossly intact cognitive functioning. (Id.) Critically, however, Plaintiff denied hallucinations, delusions, and suicidal or homicidal ideations. (Id.) These findings are grossly incongruent with a GAF score of 50. Consequently, ALJ Olarsch properly discounted and/or accorded minimal weight to Dr. Williams's opinion.

### C. The ALJ's Evaluation of Plaintiff's Mental Impairment

Plaintiff alleges that the ALJ failed to utilize the procedure for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a and 416.920a. (Pl. Br. 12.) Plaintiff also claims that ALJ Olarsch failed to question Plaintiff about the functional limitations caused by her mental impairments during the first and second hearing on this matter. (Pl. Br. 13.) These contentions are meritless.

Commonly referred to as the special technique or psychiatric review technique ("PRT"), the procedure at issue is used to assess a claimant's functional limitations in four areas:

---

[4] A GAF score between 41 and 50 indicates serious symptoms, such as suicidal ideation, severe obsessional rituals, frequent shoplifting; or serious impairment in social or occupational functioning, while a GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning, such as few friends or conflict with peers or coworkers). A score between 61 and 70 is indicative of mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally well-functioning with the ability to maintain meaningful interpersonal relationships. DSM-IV-TR, at 34.

concentration, persistence, or pace; activities of daily living; social functioning; and episodes of decompensation. The first three categories are rated on a five point scale ranging from "none", "mild", "moderate", "marked", to "extreme", whereas the rating scale for the fourth category is "none", "one or two", "three", or "four or more". See §416.920a(c)(3). Here, the ALJ applied the special technique in his evaluation of Plaintiff's functional limitations when he concluded that Plaintiff "has mild limitations of activities of daily living, moderate restrictions in maintaining social functioning, mild restrictions in maintaining concentration, persistence, or pace, and no episodes of decompensation." (R. 25).

Similarly, Plaintiff's allegation that ALJ Olarsch failed to question Plaintiff about her functional limitations is both disingenuous and meritless. For one, Plaintiff's attorney queried Plaintiff on this issue during the first hearing. (R. 90-94; 98-104.) Moreover, Plaintiff's attorney declined to elicit testimony regarding Plaintiff's functional limitations during the post-remand hearing because according to him Plaintiff testified about them in the first hearing and "Dr. Williams['s] [report] speaks directly to the point that things are the same, or worse, you know, since her first report." (R. 55.) Nonetheless, ALJ Olarsch questioned Plaintiff about her psychiatric treatment and its effectiveness during the second hearing. (R. 47-49.) This Court, therefore, finds no error in the ALJ's evaluation of Plaintiff's functional limitations.

### D. ALJ's Failure to Obtain Additional Consultative Examinations.

Plaintiff contends that the ALJ violated the Appeals Council's remand order by neglecting to obtain updated reports regarding Plaintiffs' mental health. (Pl. Br. 13-15). However, as the Commissioner points out, the Appeals Council used permissive, not mandatory, language in this

portion of the remand order, which mirrors the language of the regulation governing an ALJ's use of consultative examiners. (Def. Br. 9). The remand order directs the ALJ to:

> Obtain updated evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding existing medical evidence (20 C.F.R. 416.912-913). Additional evidence *may* include, *if warranted and available*, consultative examinations with psychological testing and medical source statements about what the claimant can still do despite the impairment.

(R. 128.) (emphasis added). Pursuant to 20 CFR § 416.919, the "decision to purchase a consultative evaluation will be made on an individual case basis . . ." Clearly, the ALJ has some discretion to determine when additional consultative examinations may be necessary. Furthermore, it is unclear whether Plaintiff raised this issue before the ALJ during the remand proceedings. Therefore, Plaintiff has failed to establish that ALJ Olarsch's failure to order additional consultative examinations violated the Appeals Council's remand order.

### E. The ALJ's Failure to Evaluate the Evidence in Accordance with SSR 85-16

Plaintiff argues that ALJ Olarsch did not specify, as directed by the Appeals Council, the limitations Plaintiff may have in performing mental work-related activities, in light of her affective disorder. This contention is unsupported by the record.

In his RFC assessment, ALJ Olarsch detailed the Plaintiff's extensive psychiatric treatment record and indicated that he considered the limitations identified therein, such as Plaintiff's mood instability, irritability and difficulty in crowds, in arriving at his conclusion that Plaintiff can perform "limited simple, routine, repetitive tasks involving only simple work related decisions and few work place changes; limited to occasional interaction with supervisors, co-workers and the general public." (R. 26-31.) This Court perceives no error in ALJ Olarsch's conclusion. Therefore, ALJ Olarsch's analysis is consistent with the Appeals Council's order.

**F. The ALJ's Hypothetical Questions to the Vocational Expert.**

The burden of proof shifts to the Commissioner at step five to determine whether the claimant is capable of performing "other work". See 20 C.F.R. § 416.20(g); <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir.) A vocational expert may assist the Court during this step of the analysis. See C.F.R. § 404.1566(e). Plaintiff argues that ALJ Olarsch erroneously disregarded the testimony of Vocational Expert, Rocco Meola ("Meola"), who testified at the remand hearing.

Here, the ALJ first asked Meola to opine on the work-related abilities of a hypothetical individual with the same RFC as the ALJ's eventual RFC finding as to Plaintiff.  In response, Meola testified that such an individual would not be able to perform Plaintiff's past relevant work but would be capable of light work and unskilled work required for occupations such as: decal applier, weigher or microfilm mounter. (R. 33.) The ALJ then asked whether Plaintiff would be able to engage in any work related activities if her testimony were deemed credible, and Meola testified that she could not. (R. 30.) Plaintiff now argues that the ALJ should have relied on the latter testimony.

Plaintiff appears to contend that the ALJ is duty bound to accept Plaintiff's subjective testimony as truthful. In determining that Plaintiff's subjective allegations were not entirely credible, the ALJ considered Plaintiff's function reports in which she detailed her activities of daily living, and the location, frequency and intensity of her symptoms. In April of 2008, Plaintiff reported that she went outside daily, prepared her own meals, did laundry, cleaned her apartment, and went shopping two to three times a week. (R. 28.) She also intimated that she was able to travel alone, by car and public transportation. (<u>Id.</u>) During the remand hearing, Plaintiff testified that she spends the entire day in bed about twice or three times a month, visits Dr. Williams about once a month or every six weeks, has her asthma and hypertension under control, and is taking

medication which generally alleviates her psychiatric symptoms. (R. 44-49.) However, she complained of having stiff knees, medication-induced paranoia (undiagnosed), and a general lack of interest. (Id.)

ALJ Olarsch determined that the "evidence as a whole, considering all medical and non-medical elements, does not support the extent of the plaintiff's subjective complaints . . . Although the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted." (R. 31.) An ALJ's credibility determination is entitled to substantial deference on appeal. Izzo v. Comm'r of Soc. Sec., 186 F. App'x 280, 284 (3d Cir 2003). Furthermore, the ALJ's RFC assessment is consistent with Plaintiff's functional limitations. In his RFC finding, the ALJ specified that Plaintiff would be "limited to simple, routine, repetitive tasks involving only simple work related decisions and few work place changes" as well as "occasional interaction with supervisors, coworkers, and the general public." (R. 26.) Therefore, this Court discerns no error in ALJ Olarsch's use of the Vocational Expert's testimony.

## IV.    CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** ALJ Olarsch's decision.

**SO ORDERED.**

s/Susan D. Wigenton, U.S.D.J.

CC:    Steven C. Mannion, U.S.M.J.

16